# EXHIBIT 1



**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Nicole K. Livingston
_____
                                                    Plaintiff
                        vs.

                                                                        Case Number    2018 CA 001226 B
VMD Systems
_____
                                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Morris E. Fischer
_____
Name of Plaintiff's Attorney

8720 Georgia Avenue, Suite 210
_____                    By _____
Address
Silver Spring, MD 20910

(301) 328-7631
_____                    Date            02/22/2018
Telephone

_Clerk of the Court_

_Deputy Clerk_

如需翻译,请打电话 (202) 879-4828         Veuillez appeler au (202) 879-4828 pour une traduction         Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요.         ፕርጉም ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

Filed
D.C. Superior Court
02/25/2018 15:22PM
Clerk of the Court

## IN THE SUPERIOR COURT OF
## THE DISTRICT OF COLUMIBA

\* \* \* \* \* \* \* \* \* \* \*

NICOLE K. LIVINGSTON     \*
2320 Mitchellville Road
Bowie, Md. 20716     \*

       *Plaintiff,*     \*    Case No.:  **2018 CA 001226 B**

       v.     \*

MAGNUM MULTIMEDIA, INC.     \*    **Jury Trial Demanded**
13800 Coppermine Rd., Suite 310
Herndon, Va. 20171, and     \*

VMD Systems,     \*
11440 Commerce Park Dr.
Suite 400     \*
Reston, Va. 20191
    \*

       *Defendants.*
\* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Nicole K. Livingston, by way of her attorney, Morris E. Fischer, Esq., hereby

files the following complaint under the District of Columbia Human Rights Act, including sexual

harassment and hostile work environment, on information and belief formed after reasonable

inquiry under the circumstances, against Defendants:

## PARTIES

1. Plaintiff, Nicole K. Livingston (hereinafter "Ms. Livingston" or "Plaintiff"), was at all

times relevant hereto an employee of Magnum Multimedia, Inc.

2. Magnum Multimedia, Inc., is a private Herndon, Virginia based corporation, that

contracts with the Federal Government to provide web design services.

3.  VMD Systems is a private Reston, Virginia, Sys based corporation that contracts with the Federal Government to provide services.

## NATURE OF THIS ACTION

4.  This action is brought pursuant to DCHRA, D.C. Code § 2.1401.01, *et seq.* for damages and other monetary relief.

5.  Defendants, knowing that Plaintiff had been sexually harassed, failed to report or take any action on the incidents of sexual harassment for a month while the harassment was ongoing.

## JURISDICTION AND VENUE

6.  This court has subject matter jurisdiction over this action pursuant to D.C. Code § 11-921.

7.  This court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-423 because Defendant transacts business in the District of Columbia.  The discriminatory conduct also occurred in the District of Columbia.

## FACTS

8.  Ms. Livingston began working for Magnum Media in December of 2016.

9.  When Ms. Livingston began working for Magnum Media in December of 2016, Ms. Patricia Gayle (Ms. Gayle), the Contracting Officer's Representative ("COR") for the Department of Labor ("DOL"), was not on duty in the office.

10. When Ms. Gayle returned to work, she had Ms. Livingston come into her office to discuss her (Ms. Gayle's) position as the COR for the contract and her expectations for the contractors.

11. Ms. Gayle informed Ms. Livingston that if she was not pleased with a contractor's work, then she would "snatch [her] badge or [Ms. Livingston] could come to work and [her] badge would be deactivated."

12. Ms. Livingston interpreted the aforesaid statement in paragraph 11 to mean that Ms. Gayle could terminate her at any given moment and that keeping her job solely depended on pleasing Ms. Gayle.

13. At the time of the relevant incidents mentioned in this Complaint, Ms. Tanya Lowe (Ms. Lowe) oversaw one of the investments that Ms. Livingston managed, the National Contract Center (NCC).

14. Ms. Gayle stated that Ms. Lowe was her "back up" and during a meeting with Ms. Lowe, Ms. Lowe made it clear that she is the director and that she would also "snatch badges."

15. Ms. Gayle made it very clear to Ms. Livingston and to other contractors that their employment depended upon pleasing Ms. Gayle, who would be backed up by Ms. Lowe and that either could terminate a contractor for any given reason.

16. During the week of February 27, 2017, Ms. Gayle instructed Ms. Livingston to take off her shawl.   This occurred at the microwave in Ms. Livingston's and the other contractor's work area.

17. Simon Chang's, Program Manager, cubicle was directly across from the microwave. Ms. Livingston asked Ms. Gayle what she meant by this, and Ms. Gayle responded "Take it off, I want to see something."

18. Ms. Livingston took off the shawl and Ms. Gayle looked her up and down about three times (checking out Ms. Livingston in a sexual manner).

19. After the incident Ms. Livingston asked, "That was it?  What was that?"  Ms. Gayle stated, "You can put it back on, I wanted to see something."

20. In or around the time period between February 27 and March 7, Ms. Tonya Lowe, a Director for the DOL in OPA and the Project Manager (PM) for the NCC Invesment that Ms. Livingston managed at the time , directed Ms. Livingston into Ms. Gayle's office and Ms. Gayle said "I want you to take your shawl off."  This was despite the fact that you could see Ms. Livingston from Ms. Gayle's office.  Ms. Livingston asked why?  Ms. Gayle responded "I just want to see something."  Ms. Livingston asked, "Is something on my clothes that I don't see?"  Ms. Gayle simply replied, "no I want to see."  Ms. Livingston took her shawl off and Ms. Gayle and Ms. Lowe looked Ms. Livingston up and down and did not say a word but just looked at her body.  Ms. Gayle said she could put the shawl back on.

21. It was apparent that Ms. Gayle and Ms. Lowe called Ms. Livingston into the office to look at her body and she was being sexually harassed, she felt uncomfortable, intimidated and demeaned, they were threatening her with her job so they could look at her.

22. Ms. Lowe and Gayle began speaking about another contractor and colleague of Ms. Livingstons', John Croston.  They spoke about a possible body odor or hygiene issue, stated that other contractors had complained about Mr. Croston's hygiene, that if she had a problem with it to let them know (Croston sat about 20 feet away from Ms. Livingston), and Ms. Livingston would not otherwise have known about any of this.

23. After this incident Ms. Livingston complained to Simon Chang, the Program Manager who worked for Magnum, Allen Jones, her immediate direct work manager, and John Ripple who was her representative from VMD, the contractor that she worked for.

24. Simon Chang ("Mr. Chang") was Ms. Livingston's direct supervisor.

4

25. On or about March 7, 2017, Tanya Lowe instructed Ms. Livingston to go into Patricia Gayle's office. Ms. Lowe said "Nicole, Patricia wants to see you." Ms. Livingston went into Ms. Gayle's office. Ms. Lowe closed the door, stood in front of the door as to block it, Ms. Livingston asked Ms. Gayle "You asked to see me?" and Ms. Gayle responded "Yes, I want to see what you have on, take off your shawl." Ms. Livingston then asked, "Is there something on my clothes?" Ms. Gayle responded, "I want to look at what's under your shawl."

26. Ms. Livingston hurried up and took the shawl off thinking it was the only way out of the situation. Both Ms. Gayle and Ms. Lowe were very clear that they would take Ms. Livingston's badge (fire her), if she did not do as instructed. Ms. Lowe is very stout and was blocking the door, Ms. Livingston thought she had to take off her shawl or she would lose her job.

27. Ms. Livingston took the shawl off and Ms. Lowe and Gayle looked her up and down and then Ms. Gayle said, "You need to be mindful not to show your bra strap in the office." Ms. Lowe then stated, "Patricia she had on her shawl."

28. Subsequently, Ms. Lowe said, "Well, you guys want to see my titties? I have fresh ones. Let's show our titties." Ms. Livingston said, "What?" Ms. Lowe replied, "I had surgery because I have the cancer gene so I got my breast removed and did everything all at once." She then said that her breasts "sit straight up." Ms. Gayle said, "I don't mind showing my titties." Ms. Livingston did not respond, she was harassed, uncomfortable, her job was tied to allowing the harassment to happen, and she immediately tried to think of an excuse to get out of her office.

29. At this time Ms. Livingston specifically thought to herself that she was in an office with two unprofessional women, who did not have enough sense to not engage in harassment and used their positions as Federal Government employees to intimidate and sexually harass her.

5

She was humiliated to have two women call her into her office, close the door and block it, and ask her to take her clothing off.

30. Renisha Smith came into the room and Ms. Livingston had a chance to escape.

31. On or about March 8, 2017, the next morning, Ms. Livingston met with Simon Chang as soon as she arrived in the office.  She reported the sexual harassment to him.

32. Mr. Chang asked Ms. Livingston if she could work around "it," meaning could she work around their sexual harassment.

33. Ms. Gayle and Ms. Lowe had threatened to snatch Simon Chang's badge (fired him), and based upon Mr. Chang's comments Ms. Livingston knew that Simon Chang did not want to jeopardize his job.

34. Ms. Livingston reported the sexual harassment to Allen Jones on March 9, 2017.

35. Mr. Jones immediately reported the harassment to VMD on March 9, 2017.

36. The harassment continued into April 2017 despite the fact that Ms. Livingston reported the harassment to her immediate supervisor and the project manager Simon Chang.

37.  On or about March 13, 2017, Ms. Gayle brought Ms. Livingston into her office and stated she was worried, she apologized and then she told Ms. Livingston that she (Ms. Gayle) thought that Ms. Livingston looked uncomfortable.  Ms. Livingston said, "Yes I was uncomfortable."

38. Throughout the duration of Ms. Livingston's dealings with Ms. Gayle, Ms. Gayle cussed, used profane language and addressed Ms. Livingston in an abusive manner.

39. There would be times when Ms. Livingston would leave her because she was left in the office alone with Ms. Gayle or Ms. Lowe while her co-workers were in meetings.

40. Despite Ms. Livingston's complaints neither VMD nor Magnum Media did anything about Ms. Livingston's complaints for approximately a month and a half, beginning from late February, 2017 until mid-April 2017.

41. On April 10, 2017, in light of VMD and Magnum Media's inaction, Ms. Livingston complained to the internal EEOC office, specifically to Ebony Ross and an investigation ensued.

42. Ms. Livingston believes that Magnum and VMD eventually reported the sexual harassment to the DOL, but that this happened approximately halfway through April 2017.

## COUNT I: SEXUAL HARASSMENT
### (Violation of DCHRA Quid Pro Quo)

43. Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

44. Plaintiff was an employee of VMD, which was a sub-contractor for Magnum Media.

45. Ms. Gayle and Ms. Lowe engaged in unwanted verbal and physical conduct of a sexual nature.

46. The job benefits were conditioned, by words or conduct, on Plaintiff's acceptance of Ms. Gayle's sexually harassing conduct.

47. Employment decisions affecting Plaintiff were made based on her acceptance or rejection of Ms. Gayle's sexually harassing conduct.

48. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by mental health providers, and other costs and expenses.

## COUNT II: SEXUAL HARASSMENT-HOSTILE WORK ENVIRONMENT

49. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

7

50. Plaintiff is a member of a protected class on account of her sex (female).

51. During the course of her employment at VMD and Magnum Media, Plaintiff was repeatedly subjected to unwelcome sexual harassment by Ms. Gayle, who was not her supervisor, but it was made clear by Ms. Lowe, that Ms. Gayle had immediate and complete authority over her.

52. Ms. Livingston was subjected to offense and disparaging conduct when a) Ms. Gayle and Ms. Lowe made Plaintiff take off her shawl, looked Plaintiff up and down in a sexual manner, and then Ms. Lowe proceeded to ask, "Well, you guys want to see my titties? I have fresh ones. Let's show our titties," b) on numerous other occasions Ms. Gayle made Ms. Livingston take off her shawl and looked Ms. Livingston up and down in a sexual manner without any reason, c) when Ms. Gayle continuously used profane language and abused Ms. Livingston, and d) when Ms. Gayle instructed Ms. Livingston to take her shawl off in the middle of a shared work space where Ms. Livingston and her co-worker's cubicles were, looked Ms. Livingston up and down in a sexual manner and upon being asked what her reasoning was, Ms. Gayle stated, "I wanted to see something."

53. Ms. Livingston was subject to Ms. Gayle's conduct based upon her sex.

54. The Ms. Gayle and Ms. Livingston's conduct was unwelcome. Ms. Livingston felt compelled to take her shawl off in fear of losing her job.

55. Plaintiff believed her work environment to be hostile or abusive.

56. The harassment was sufficiently pervasive and severe to alter the terms, conditions or privilege of Plaintiff's employment by creating a threatening, oppressive, hostile, and offensive work environment which interfered with Plaintiff's employment and well-being.

8

57. Defendants knew about Ms. Gayle and Ms. Lowe's harassing conduct when Ms. Livingston complained to Mr. Chang on March 8 and to Mr. Allen on March 9, 2017.

58. Defendants Magnum Media and VMD failed to take prompt and appropriate corrective action to end the harassment by waiting approximately two months to take action.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, Ms. Livingston, respectfully requests that the Court:

a) Enter judgment in favor of Ms. Livingston declaring that Magnum Media and VMD violated the DCHRA, D.C. Code § 2.1401.01 *et seq.*

b) Award Plaintiff monetary damages in an amount to be determined at trial;

c) Award Plaintiff reasonable attorneys' fees and costs;

d) Award Plaintiff punitive damages in an amount to be determined at trial;

e) Grant such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Superior Court Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable as of right.

Dated: February 16, 2018                    Respectfully Submitted,

/s/ Morris E. Fischer
Morris E. Fischer (D.C. Bar No. 490369)
Morris E. Fischer, LLC.
8720 Georgia Avenue, Suite 210
Silver Spring, Md. 20910
Phone: (301) 328-7631
Fax: (301) 328-7638

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

_____
)
NICOLE K. LIVINGSTON            )
)
*Plaintiff,*      )
)      Case No. 2018 CA 001226 B
v.                   )
)      Next Event: May 18, 2018
MAGNUM MULTIMEDIA, INC., and  )      (Initial Scheduling Conference)
)
)
VMD SYSTEMS,          )
)
*Defendants.*   )
_____)

## MOTION TO DISMISS OR IN THE ALTERNATIVE
## MOTION FOR A MORE DEFINITE STATEMENT

COMES NOW Defendant Magnum Multimedia, Inc. ("Magnum"), by its undersigned attorneys, pursuant to Rules 12(b)(6) and 12(e) of the Superior Court Rules of Civil Procedure, and hereby moves this Honorable Court to dismiss the Complaint in its entirety with prejudice because Plaintiff Nicole Livingston ("Plaintiff") has failed to state a claim for which relief can be granted.  Alternatively, Magnum moves the Court to order Plaintiff to provide a more definite statement.  As grounds therefor to the requested relief, Magnum relies on the Memorandum of Points and Authorities appended hereto.

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss the Complaint in its entirety with prejudice and award such other and further relief as this Court deems appropriate under the circumstances.  Alternatively, Defendant respectfully requests this Honorable Court to order Plaintiff to provide a more definite statement and award such other and further relief as this Court deems appropriate under the circumstances.

Dated:  March 23, 2018                    Respectfully submitted,


                                          /s/       Ambika J. Biggs
                                          Ambika J. Biggs – D.C. Bar # 501225
                                          PilieroMazza PLLC
                                          888 17th Street, N.W., 11th Floor
                                          Washington, D.C.  20006
                                          (202) 857-1000
                                          (202) 857-0200 (fax)
                                          abiggs@pilieromazza.com

                                          *Attorneys for Defendant Magnum Multimedia, Inc.*



### CERTIFICATE PURSUANT TO D.C. SUP. CT. R. CIV. P. 12-I(a)

From March 16 through March 23, 2018, the parties exchanged numerous communications regarding Defendant Magnum's request to be dismissed from the case.  The undersigned hereby certifies that, despite having made good-faith and diligent efforts prior to filing this Motion to ascertain whether Plaintiff would consent to dismissal, consent could not be obtained.


                                          /s/       Ambika J. Biggs

## CERTIFICATE OF SERVICE

I CERTIFY that on this 23rd day of March, 2018, a true and correct copy of the foregoing

motion was served on counsel for Plaintiff through the Court's electronic filing system and by

first class mail, postage prepaid at the following address:

> Morris E. Fischer
> Morris E. Fischer, LLC
> 8720 Georgia Avenue, Suite 210
> Silver Spring, MD  20910
> Phone:  (301) 328-7631
> Fax:  (301) 328-7638
> *Attorney for Plaintiff Nicole K. Livingston*

And on Defendant VMD Systems by first class mail, postage prepaid at the following

address:

> VMD Systems
> 11440 Commerce Park Drive
> Suite 400
> Reston, VA 20191

/s/        Ambika J. Biggs

3

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

_____
                         )

NICOLE K. LIVINGSTON         )
                          )
             *Plaintiff,*    )
                          )     Case No. 2018 CA 001226 B
v.                        )
                          )
MAGNUM MULTIMEDIA, INC., and  )
                          )
                          )
VMD SYSTEMS,             )
                          )
            *Defendants.*  )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MAGNUM MULTIMEDIA, INC.'S MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT**

      Defendant Magnum Multimedia, Inc. ("Magnum"), by its undersigned attorneys, and pursuant to Rules 12(b)(6) and 12(e) of the District of Columbia Superior Court Rules of Civil Procedure, hereby moves this Court to dismiss the Complaint in its entirety because Plaintiff Nicole Livingston ("Plaintiff") has failed to state a claim for which relief can be granted. Alternatively, Magnum moves the Court to order Plaintiff to provide a more definite statement regarding who she alleges her employer was at the times relevant to the Complaint.

**I.     BACKGROUND**

      On February 16, 2018, Plaintiff filed a Complaint under the District of Columbia Human Rights Act ("DCHRA") alleging that two U.S. Department of Labor ("DOL") employees subjected her to sexual harassment and a hostile work environment, and Defendants Magnum and VMD Systems ("VMD") did not report or take any actions regarding the sexual harassment for a month.  Compl. ¶¶ 5, 16–36.  The following facts are based on the allegations in the

Complaint, which the Court must accept as true on a motion to dismiss. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015).

Plaintiff alleges that she began working for Magnum in December of 2016. Compl. ¶ 8. Plaintiff also alleges, inconsistently, that she was an employee of VMD, which was a subcontractor for Magnum. Compl. ¶ 44. Plaintiff claims that Patricia Gayle, the Contracting Officer's Representative, made statements that Plaintiff interpreted as meaning that Ms. Gayle could terminate Plaintiff at any given moment and that "keeping her job solely depended on pleasing Ms. Gayle." Compl. ¶¶ 11–12. Plaintiff alleges that Tanya Lowe, a director for the DOL, oversaw one of the investments that Plaintiff managed, and Ms. Lowe was Ms. Gayle's "back up." Compl. ¶¶ 13–14. According to Plaintiff, Ms. Gayle made it clear that Ms. Lowe also could terminate Plaintiff "for any given reason." Compl. ¶ 15.

Plaintiff claims that on February 27, 2017, Ms. Gayle instructed Plaintiff to remove her shawl, and after Plaintiff complied, Ms. Gayle looked Plaintiff up and down in a sexual manner. Compl. ¶¶ 16–19. According to the Complaint, sometime between February 27, 2017 and March 7, 2017, Ms. Lowe directed Plaintiff into Ms. Gayle's office, at which point Ms. Gayle asked Plaintiff to remove her shawl. Compl. ¶ 20. After Plaintiff complied, both Ms. Gayle and Ms. Lowe looked Plaintiff up and down and "did not say a word but just looked at her body." *Id.* After this incident, Plaintiff complained to Simon Chang, the Program Manager who worked for Magnum and who Plaintiff alleges was her direct supervisor; Allen Jones, her direct work manager; and John Ripple, "who was her representative from VMD, the contractor that she worked for." Compl. ¶¶ 23–24.

Plaintiff alleges that on March 7, 2017, Ms. Lowe instructed Plaintiff to go into Ms. Gayle's office once again. Compl. ¶ 25. Once Plaintiff went into Ms. Gayle's office,

Ms. Lowe closed the door and stood in front of it to block it and asked Plaintiff to take off her shawl.  *Id.*  Ms. Gayle and Ms. Lowe informed Plaintiff that they would fire her if she did not do as requested.  Compl. ¶ 26.  After Plaintiff complied, Ms. Lowe asked if Ms. Gayle and Plaintiff wanted to see her breasts and suggested that Ms. Gayle and Plaintiff also expose their breasts, and Ms. Gayle agreed to do so.  Compl. ¶¶ 26–28.  Plaintiff did not respond and tried to think of an excuse to leave Ms. Gayle's office.  Compl. ¶ 28.

On March 8, 2017, Plaintiff met with Mr. Chang as soon as she arrived in the office and reported the incident to him.  Compl. ¶ 31.  Plaintiff alleges that Mr. Chang asked whether Plaintiff could work around the sexual harassment.  Compl. ¶ 32.  Both Ms. Gayle and Ms. Lowe had threatened to fire Mr. Chang and, based on his comments, Plaintiff knew that he did not want to jeopardize his job.  Compl. ¶ 33.  Plaintiff reported the harassment to Mr. Jones on March 9, 2017, and Mr. Jones reported it to VMD on March 9, 2017.  Compl. ¶¶ 34-35.  Plaintiff claims that the harassment continued into April 2017, but does not provide any examples of the continued harassment.  Compl. ¶ 36.  On March 13, 2017, Ms. Gayle apologized to Plaintiff. Compl. ¶ 37.

Plaintiff alleges that neither VMD nor Magnum did anything about her complaints for approximately a month and a half, from February 2017 to mid-April 2017.  Compl. ¶ 40.  On April 10, 2017, Plaintiff complained to the internal Equal Employment Opportunity Commission office and an investigation ensued.  Compl. ¶ 41.  Plaintiff believes that VMD and Magnum eventually reported the sexual harassment to the DOL approximately in mid-April 2017.  Compl. ¶ 42.

Plaintiff has brought a claim for violation of the DCHRA based on *quid pro quo* sexual harassment against VMD and Magnum based on Ms. Gayle and Ms. Lowe's actions.  Compl.

¶¶ 43-48.  Plaintiff has brought a separate claim for hostile work environment sexual harassment against VMD and Magnum because they knew about Ms. Gayle and Ms. Lowe's actions and VMD and Magnum failed to take prompt action and appropriate corrective action.  Compl. ¶¶ 49–58.  The DOL, Ms. Gayle and Ms. Lowe are not named as defendants in this matter.

## II.   ARGUMENT

Magnum moves to dismiss the Complaint because Plaintiff has failed to state a claim upon which relief can be granted.  Sup. Ct. R. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Sundberg*, 109 A.3d at 1129.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 1129–29.  In addition, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and 'unadorned, the-defendant-unlawfully-harmed-me accusations' also are insufficient."  *Id.* at 1129 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).

### A.   The Complaint Fails to Allege a Claim for *Quid Pro Quo* Harassment

Plaintiff has failed to allege a cause of action for *quid pro quo* sexual harassment under the DCHRA.  The DCHRA states, in pertinent part:

> It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived: … sex … gender identity or expression … of any individual:  (1) *By an employer.* -- To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

D.C. CODE § 2-1402.11.  In construing the DCHRA, the D.C. Court of Appeals often looks to cases brought under federal Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988), given the similarities between the two statutes.  *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999); *McCain v. CCA of Tennessee, Inc.*, 254 F. Supp.2d 115, 119 (D.D.C. 2003) ("The legal standards under the DCHRA are the same as those governing Title VII of the Human Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*").  Thus, the elements of a *quid pro quo* sexual harassment under DCHRA claim are:

1. the employee is a member of a protected class;
2. the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors;
3. the harassment complained of was based on sex;
4. the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and
5. the existence of *respondeat superior* liability.

*Ryczek v. Guest Servs., Inc.*, 877 F. Supp. 754, 760 (D.D.C. 1995) (citations omitted).

Plaintiff has not plead the necessary elements of a *quid pro quo* sexual harassment claim. Even assuming *arguendo* that Plaintiff properly plead the first three elements of the cause of action, she has not alleged that her submission to the unwelcome advances was an express or implied condition "for receiving job benefits," nor that her refusal resulted in a "tangible job detriment."  *Id.*  Plaintiff has not alleged she received any benefit by complying with Ms. Gayle's request to remove her shawl, nor that she suffered an adverse employment action by her refusal to bare her breasts.

"[T]he gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail and that adverse consequences follow from the employee's refusal."  *Gary v. Long*, 59 F.3d 1391, 1395–96 (D.C. Cir. 1995)

(holding that a plaintiff failed to make out a case for *quid pro quo* sexual harassment under

Title VII where her supervisor did not carry out his threats of adverse job consequences if

plaintiff did not submit to his sexual advances).  While Plaintiff has alleged that Ms. Gayle and

Ms. Lowe had expressed that they had the ability to fire her, "it takes more than saber rattling

alone to impose *quid pro quo* liability on an employer; the supervisor must have wielded the

authority entrusted in him to subject the victim to adverse job consequences as a result of her

refusal to submit to unwelcome sexual advances."  *Id.* at 1396.

In *Ryczek*, a culinary arts student who worked at a museum as part of a cooperative

education program alleged that she believed if she did not submit to the chef's sexual advances,

her grade would suffer.  *Ryczek*, 877 F. Supp. at 760.  The U.S. District Court for the District of

Columbia held that the plaintiff had not made out a *quid pro quo* harassment claim because she

was not denied a job benefit and did not suffer a job detriment as a result of her failure to submit

to the sexual advances; therefore, there was no *quid pro quo* liability.  *Id.*  at 760–61.  In this

case, Plaintiff has not alleged that Ms. Gayle or Ms. Lowe — much less Magnum — took any

adverse work action against Plaintiff as a result of her refusal to submit to Ms. Gayle's request

that she expose her breasts.

Plaintiff's assertions that "job benefits were conditioned, by words or conduct, on

Plaintiff's acceptance of Ms. Gayle's sexually harassing conduct" and "[e]mployment decisions

affecting Plaintiff were made based on her acceptance or rejection of Ms. Gayle's sexually

harassing conduct" are not sufficient to state a claim.  The Court is not required to accept these

allegations — which are not supported by any facts — as true.  *Sundberg*, 109 A.3d at 1129.

Furthermore, these "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements" are not sufficient to state a claim. *Id.* Thus, Plaintiff has failed to allege a cause of action for *quid pro quo* sexual harassment.

### B.      The Complaint Fails to Allege a Claim for Hostile Work Environment

Plaintiff has failed to properly allege a claim for hostile work environment under the DCHRA.  The elements for a hostile work environment claim are:  (1) the plaintiff is a member of a protected class; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on membership in the protected class; and (4) the harassment is severe and pervasive enough to affect a term, condition, or privilege of employment.  *McCain*, 254 F.Supp.2d at 120. In determining whether a work environment is hostile, the courts look to:  (1) the frequency of the discriminatory conduct; (2) the conduct's severity; (3) whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance.  *Id.* at 120.  While Plaintiff has alleged the first three elements of a claim for hostile work environment, her allegations regarding the severity and pervasiveness of the alleged harassment are not sufficient to state a cause of action.

Under the DCHRA, "alleged harassment is generally not held to be sufficiently severe or pervasive to create a hostile work environment where it is limited to isolated incidents." *Id*. at 121 (holding that claim by plaintiff that superior invited her to his hotel room, she rebuffed his invitation, and he subsequently asked her why she had refused, "does not begin to approach the conduct" necessary to be sufficiently severe or persuasive to be actionable).  In *Russ v. Van Scoyoc Associates, Inc.*, the U.S. District Court for the District of Columbia held that an incident in which a superior told an assistant that he admired her breasts, wanted to have sex and oral sex with her, and that she could make more money working at Hooters than at her current job did not

reach the level of actionable conduct under Title VII because "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Russ v. Van Scoyoc Assocs., Inc.*, 122 F.Supp.2d 29, 32 (D.D.C. 2000) (citation omitted). In this case, Plaintiff has alleged that Ms. Gayle and Ms. Lowe asked Plaintiff to remove her shawl on three occasions and Ms. Lowe suggested that they expose their breasts to each other. Compl. ¶¶ 16–21, 25–28. Subsequently, Ms. Gayle apologized for her behavior. Compl. ¶ 36. Plaintiff has not alleged any further harassment, aside from the vague allegation that "the harassment continued into April 2017" — which includes no details regarding the alleged subsequent harassment. Plaintiff has alleged no more than isolated incidents of harassment, which are not sufficient to plead a hostile work environment claim.

To the extent Plaintiff claims that Ms. Gayle used profane language when speaking with Plaintiff or addressed her in an abusive manner (Compl. ¶ 38), such an allegation is not sufficient to support a hostile work environment claim. *Ryczek*, 877 F. Supp. at 759 (holding that the use of foul language is not a sufficient basis for Title VII liability based on a hostile work environment claim); *see also Russ*, 122 F.Supp.2d at 32 (holding that being yelled at by a supervisor does not rise to the level of an adverse employment action). Thus, Plaintiff's hostile work environment claim should be dismissed for failure to state a claim.

C.   **Plaintiff's Request for Punitive Damages Must Be Dismissed**

In addition, the Court should dismiss Plaintiff's request for punitive damages. Plaintiff has failed to plead that Magnum engaged in malicious, wanton, reckless, or willful actions against her. *United Mine Workers of Am., Int'l Union v. Moore*, 717 A.2d 332, 341 (D.C. 1998) (holding that while a union's behavior was discriminatory, it did not warrant punitive damages because the supervisory personnel did not participate in or otherwise condone working

conditions in which the plaintiff was subject to gender-based comments and the complained of conduct was not accompanied by the requisite malice or evil motive to justify an award of punitive damages).  As Plaintiff has failed to plead that Magnum engaged in the type of action that would warrant punitive damages, her request for such damages should be dismissed.

### D.     <u>Plaintiff Must Make a Definitive Statement Regarding Plaintiff's Employer</u>

The Court should grant Magnum's motion to dismiss the Complaint for the reasons set forth above.  However, if the Court does not dismiss the Complaint, it should order Plaintiff to amend the Complaint to make a more definite statement regarding Plaintiff's employer. Pursuant to Rule 12(e) of the Superior Court Rules of Civil Procedure, a party may move for "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Plaintiff has made the following inconsistent allegations regarding her employer:  (1) Plaintiff "was at all times relevant hereto an employee of Magnum Multimedia, Inc."; (2) Plaintiff "began working for Magnum Media in December of 2016"; (3) Plaintiff complained to "John Ripple who was her representative from VMD, the contractor that she worked for"; (4) Plaintiff "was an employee of VMD, which was a sub-contractor for Magnum Media"; and (5) "During the course of her employment at VMD and Magnum Media …".  Compl. ¶¶ 1, 8, 23, 44 and 51.

Plaintiff has alleged interchangeably that she was an employee of Magnum, VMD, and both Magnum and VMD.  Such allegations are vague and ambiguous.  In order for Magnum to prepare a response to the Complaint, Plaintiff must clarify who she alleges was Plaintiff's employer.

**III.     CONCLUSION**

WHEREFORE, for the reasons set forth above, Defendant Magnum respectfully requests that this Court grant its motion to dismiss the Complaint in its entirety with prejudice. Alternatively, Magnum requests the Court order Plaintiff to amend her Complaint to make a definitive statement as to who was Plaintiff's employer at the relevant times in the Complaint.

Respectfully submitted,

/s/        Ambika J. Biggs
Ambika J. Biggs – D.C. Bar # 501225
PilieroMazza PLLC
888 17th Street, N.W., 11th Floor
Washington, D.C.  20006
(202) 857-1000
(202) 857-0200 (fax)
abiggs@pilieromazza.com

*Attorneys for Defendant Magnum Multimedia, Inc.*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on this 23rd day of March, 2018, a true and correct copy of the foregoing Memorandum of Points and Authorities in Support of Defendant Magnum Multimedia, Inc.'s Motion to Dismiss Complaint or in the Alternative Motion for a More Definite Statement was served on counsel for Plaintiff through the Court's electronic filing system and by first class mail, postage prepaid at the following address:

> Morris E. Fischer
> Morris E. Fischer, LLC
> 8720 Georgia Avenue, Suite 210
> Silver Spring, MD  20910
> Phone:  (301) 328-7631
> Fax:  (301) 328-7638
> *Attorney for Plaintiff Nicole K. Livingston*

And on Defendant VMD Systems by first class mail, postage prepaid at the following address:

> VMD Systems
> 11440 Commerce Park Drive
> Suite 400
> Reston, VA 20191

/s/        Ambika J. Biggs

### IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| NICOLE K. LIVINGSTON | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 2018 CA 001226 B |
| v. | ) | |
| | ) | |
| MAGNUM MULTIMEDIA, INC., and | ) | |
| | ) | |
| VMD SYSTEMS, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

---

### ORDER GRANTING DEFENDANT MAGNUM MULTIMEDIA, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

This matter came before the Court on Defendant Magnum Multimedia Inc.'s ("Magnum") Motion to Dismiss Complaint.   After due consideration of the motion, any opposition, any further filings, and any oral argument before this Court, it is this ___ day of _____, 2018, by the Superior Court of the District of Columbia,

ORDERED, that Magnum's Motion to Dismiss Plaintiff's Complaint be, and the same hereby is, GRANTED; and it is further

ORDERED, that Plaintiff's Complaint be, and the same hereby is, DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


_____
Hon. William M. Jackson
Judge, Superior Court of the District of Columbia

Copies to:

Nichole D. Atallah, Esq.
Ambika J. Biggs, Esq.
Sarah Nash, Esq.
PilieroMazza PLLC
888 17th Street NW
Suite 1100
Washington, D.C. 20006
*Attorneys for Defendant Magnum Multimedia, Inc.*


Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue, Suite 210
Silver Spring, MD  20910
Phone:  (301) 328-7631
Fax:  (301) 328-7638
*Attorney for Plaintiff Nicole K. Livingston*


VMD Systems
11440 Commerce Park Drive
Suite 400
Reston, VA 20191

## IN THE SUPERIOR COURT OF
## THE DISTRICT OF COLUMIBA

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

NICOLE K. LIVINGSTON              \*
2320 Mitchellville Road
Bowie, Md. 20716                  \*

        *Plaintiff*,              \*        Case No. 2018 CA 001226 B

      v.                           \*

MAGNUM MULTIMEDIA, INC.          \*        **Jury Trial Demanded**
13800 Coppermine Rd., Suite 310
Herndon, Va. 20171, and           \*

VMD Systems,                      \*
11440 Commerce Park Dr.
Suite 400                         \*
Reston, Va. 20191
                      \*

        *Defendants*.
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED COMPLAINT

Plaintiff, Nicole K. Livingston, by way of her attorney, Morris E. Fischer, Esq., hereby

files the following Amended Complaint under the District of Columbia Human Rights Act

(DCHRA), including sexual harassment and hostile work environment, on information and belief

formed after reasonable inquiry under the circumstances, against Defendants.

## PARTIES

1. Plaintiff, Nicole K. Livingston (hereinafter "Ms. Livingston" or "Plaintiff"), was at all

times relevant hereto an employee of Magnum Multimedia, Inc.

2. Magnum Multimedia, Inc. is a private Herndon, Virginia based corporation, that

contracts with the Federal Government to provide web design services.

1

3.   VMD Systems is a private Reston, Virginia based corporation that contracts with the Federal Government to provide services.

## NATURE OF THIS ACTION

4.   This action is brought pursuant to DCHRA, D.C. Code § 2.1401.01, *et seq.* and § 2.1402, *et seq.* for damages and other monetary relief.

5.   Defendants, knowing that Plaintiff had been sexually harassed, failed to report or take any action on the incidents of sexual harassment for a month while the harassment was ongoing. In addition, Defendants retaliated against Ms. Livingston in April 2017 by forcing her to go back to work in the building.

6.   Defendant Magnum Multimedia was negligent in allowing the sexual harassment and retaliation of Ms. Livingston.

## JURISDICTION AND VENUE

7.   This court has subject matter jurisdiction over this action pursuant to D.C. Code § 11-921.

8.   This court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-423 because Defendants transact business in the District of Columbia.  The discriminatory and retaliatory conduct also occurred in the District of Columbia.

## FACTS

9.   Ms. Livingston began working for VMD in December 2016.

10. Ms. Livingston worked for VMD as a Capital Planning Investment Control Analyst.

11. VMD stationed Ms. Livingston in the Department of Labor at 2000 Constitution Avenue, NW, Washington, DC 20210.

12. Ms. Patricia Gayle (Ms. Gayle) worked for the Department of Labor (DOL) as their Contracting Officer's Representative (COR).

13. In December 2016, Ms. Gayle was out of the office when Ms. Livingston began working for VMD at DOL.

14. Within several weeks of Ms. Gayle returning to work, she had Ms. Livingston come into her office to discuss her (Ms. Gayle's) position as the COR for the contract and her expectations for the contractors.

15. Ms. Gayle informed Ms. Livingston that if she was not pleased with a contractor's work, then she would "snatch [her] badge or [Ms. Livingston] could come to work and [her] badge would be deactivated."

16. Ms. Livingston interpreted the aforesaid statement in paragraph 15 to mean that Ms. Gayle could terminate her at any given moment and that keeping her job solely depended on pleasing Ms. Gayle.

17. At the time of the relevant incidents mentioned in this Complaint, Ms. Tanya Lowe (Ms. Lowe), a DOL employee, oversaw one of the investments that Ms. Livingston managed, which was the National Contract Center (NCC).

18. Ms. Gayle stated that Ms. Lowe was her "back up" and during a meeting with Ms. Lowe, Ms. Lowe made it clear that she is the director and that she would also "snatch badges."

19. Ms. Gayle made it very clear to Ms. Livingston and to other contractors that their employment depended upon pleasing Ms. Gayle, who would be backed up by Ms. Lowe and that either could terminate a contractor for any given reason.

3

20. During the week of February 27, 2017, Ms. Gayle instructed Ms. Livingston to take off her shawl.   This occurred at the microwave in Ms. Livingston's and the other contractors' work area.

21. Simon Chang, a Magnum Multimedia employee, was the Program Manager over the entire DOL contract and worked onsite.

22. Magnum Multimedia was the prime contractor at DOL for this project.

23. VMD was the subcontractor at DOL for this project.

24. Magnum Multimedia employee Simon Chang supervised VMD employees onsite.

25. Magnum Multimedia's supervisor Simon Chang was the direct supervisor for VMD employee Allen Jones (Mr. Jones) who the Supervisor for the VMD employees onsite.

26. Notwithstanding Mr. Jones being the highest ranking official on site for VMD, he had to report to Mr. Chang.

27. Mr. Chang's work space was directly across from the location where the aforementioned conversation between Ms. Gayle and Ms. Livingston occurred.

28. Mr. Chang overheard Ms. Gayle's comment, "Take it off, I want to see something."

29. Ms. Livingston asked Ms. Gayle what she meant by this, and Ms. Gayle responded "Take it off, I want to see something."

30. Ms. Livingston took off the shawl and Ms. Gayle looked her up and down about three times (checking out Ms. Livingston in a sexual manner).

31. After the incident Ms. Livingston asked, "That was it?  What was that?"  Ms. Gayle stated, "You can put it back on, I wanted to see something."

32. In or around the time period between February 27 and March 7, Ms. Tonya Lowe, a Director for the DOL in OPA and the Project Manager (PM) for the NCC Investment that Ms.

4

Livingston managed at the time, directed Ms. Livingston into Ms. Gayle's office and Ms. Gayle said "I want you to take your shawl off." This was despite the fact that you could see Ms. Livingston from Ms. Gayle's office. Ms. Livingston asked why? Ms. Gayle responded "I just want to see something." Ms. Livingston asked, "Is something on my clothes that I don't see?" Ms. Gayle simply replied, "no I want to see." Ms. Livingston took her shawl off and Ms. Gayle and Ms. Lowe looked Ms. Livingston up and down and did not say a word but just looked at her body. Ms. Gayle said she could put the shawl back on.

33. It was apparent that Ms. Gayle and Ms. Lowe called Ms. Livingston into the office to look at her body and she was being sexually harassed, she felt uncomfortable, intimidated and demeaned, they were threatening her with her job so they could look at her.

34. Mr. Chang was effectively Ms. Livingston's direct supervisor.

35. Mr. Chang effectively controlled the hours, work product, and method of operation for Ms. Livingston.

36. On or about March 7, 2017, Tanya Lowe instructed Ms. Livingston to go into Patricia Gayle's office. Ms. Lowe said "Nicole, Patricia wants to see you." Ms. Livingston went into Ms. Gayle's office. Ms. Lowe closed the door, stood in front of the door as to block it, Ms. Livingston asked Ms. Gayle "You asked to see me?" and Ms. Gayle responded "Yes, I want to see what you have on, take off your shawl." Ms. Livingston then asked, "Is there something on my clothes?" Ms. Gayle responded, "I want to look at what's under your shawl."

37. Ms. Livingston hurried up and took the shawl off thinking it was the only way out of the situation. Both Ms. Gayle and Ms. Lowe were very clear that they would take Ms. Livingston's badge (fire her), if she did not do as instructed. Ms. Lowe is very stout and was blocking the door, Ms. Livingston thought she had to take off her shawl or she would lose her job.

38. Ms. Livingston took the shawl off and Ms. Lowe and Gayle looked her up and down and then Ms. Gayle said, "You need to be mindful not to show your bra strap in the office."  Ms. Lowe then stated, "Patricia she had on her shawl."

39. Subsequently, Ms. Lowe said, "Well, you guys want to see my titties? I have fresh ones. Let's show our titties."  Ms. Livingston said, "What?"  Ms. Lowe replied, "I had surgery because I have the cancer gene so I got my breast removed and did everything all at once."  She then said that her breasts "sit straight up."  Ms. Gayle said, "I don't mind showing my titties."  Ms. Livingston did not respond, she was harassed, uncomfortable, her job was tied to allowing the harassment to happen, and she immediately tried to think of an excuse to get out of her office.

40. At this time Ms. Livingston specifically thought to herself that she was in an office with two unprofessional women, who did not have enough sense to not engage in harassment and used their positions as Federal Government employees to intimidate and sexually harass her. She was humiliated to have two women call her into her office, close the door and block it, and ask her to take her clothing off.

41. Renisha Smith came into the room and Ms. Livingston had a chance to escape.

42. On or about March 8, 2017, the next morning, Ms. Livingston met with Simon Chang as soon as she arrived in the office.  She reported the sexual harassment to him.

43. Mr. Chang asked Ms. Livingston if she could work around "it," meaning could she work around their sexual harassment.

44. Ms. Gayle and Ms. Lowe had threatened to snatch Simon Chang's badge (fired him), and based upon Mr. Chang's comments Ms. Livingston knew that Simon Chang did not want to jeopardize his job.

45. Ms. Livingston reported the sexual harassment to Mr. Jones on March 9, 2017.

46. Subsequently, the DOL conducted an investigation into Ms. Livingston's sexual harassment allegations.

47. Mr. Jones was asked to provide an affidavit to DOL with respect to Ms. Livingston's allegations.

48. Mr. Jones readily complied with the affidavit requirements and provided an affidavit.

49. Mr. Jones stated on his affidavit that upon hearing Ms. Livingston's sexual harassment complaint, he immediately reported her complaint to Mr. Chang.

50. Mr. Jones told Ms. Livingston that he had stated the same the DOL investigator.

51. Mr. Jones immediately reported the harassment to VMD and Simon Chang on March 9, 2017.

52. The harassment continued into April 2017 despite the fact that Ms. Livingston reported the harassment to her immediate supervisor and the project manager Mr. Chang.

53.  On or about March 13, 2017, Ms. Gayle brought Ms. Livingston into her office and stated she was worried, she apologized and then she told Ms. Livingston that she (Ms. Gayle) thought that Ms. Livingston looked uncomfortable.  Ms. Livingston said, "Yes I was uncomfortable."

54. Ms. Livingston immediately told Mr. Chang and Mr. Jones of the aforesaid conversation that occurred between Ms. Gayle and Ms. Livingston on March 13, 2017.

55. Throughout the duration of Ms. Livingston's dealings with Ms. Gayle, Ms. Gayle cussed, used profane language, and addressed Ms. Livingston in an abusive manner.

56. There would be times when Ms. Livingston would leave her because she was left in the office alone with Ms. Gayle or Ms. Lowe while her co-workers were in meetings.

57. Despite Ms. Livingston's complaints neither VMD nor Magnum Media did anything about Ms. Livingston's complaints for approximately a month and a half, beginning from late February, 2017 until mid-April 2017.

58. Ms. Livingston made constant phone calls to VMD HR Director, Lora Jewell asking what was taking so long for Magnum to report the sexual harassment to DOL.

59. In the middle of April 2017 the DOL stepped in and removed Ms. Livingston from her worksite and allowed her to telework.

60. Mr. Chang left Magnum Multimedia.

61. Magnum Multimedia hired Tamara del Camp as the new Program Manager to replace Mr. Chang.

62. Ms. del Camp knew why Ms. Livingston was teleworking.

63. Magnum Multimedia, through Ms. del Camp, pestered Ms. Livingston to return to the worksite against the approval to telework from DOL due to the sexual harassment

64. Ms. Livingston felt psychologically threatened.

65. Ms. del Camp embarrassed Ms. Livingston at team meetings by asking her when she would return to the worksite and stop teleworking.


## COUNT I: SEXUAL HARASSMENT
### Violation of DCHRA § 2-1401, et seq.

66. Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

67. Plaintiff was an employee of VMD, which was a sub-contractor for Magnum Media.

68. Ms. Gayle and Ms. Lowe engaged in unwanted verbal and physical conduct of a sexual nature.

69. The job benefits were conditioned, by words or conduct, on Plaintiff's acceptance of Ms. Gayle's sexually harassing conduct.

70. Employment decisions affecting Plaintiff were made based on her acceptance or rejection of Ms. Gayle's sexually harassing conduct.

71. Defendant VMD violated the DCHRA sexual harassment provision by refusing to prevent the sexual harassment that Ms. Livingston sustained.

72. Defendant Magnum violated the DCHRA sexual harassment provision by refusing to prevent the sexual harassment that Ms. Livingston sustained.

73. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff has incurred and will continue to incur medical expenses for treatment by mental health providers, and other costs and expenses.

**COUNT II: SEXUAL HARASSMENT-HOSTILE WORK ENVIRONMENT
Violation of DCHRA § 2-1401, et seq.**

74. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

75. Plaintiff is a member of a protected class on account of her sex (female).

76. During the course of her employment at VMD and Magnum Media, Plaintiff was repeatedly subjected to unwelcome sexual harassment by Ms. Gayle, who was not her supervisor, but it was made clear by Ms. Lowe, that Ms. Gayle had immediate and complete authority over her.

77. Ms. Livingston was subjected to offense and disparaging conduct when a) Ms. Gayle and Ms. Lowe made Plaintiff take off her shawl, looked Plaintiff up and down in a sexual manner, and then Ms. Lowe proceeded to ask, "Well, you guys want to see my titties? I have fresh ones.

9

Let's show our titties," b) on numerous other occasions Ms. Gayle made Ms. Livingston take off her shawl and looked Ms. Livingston up and down in a sexual manner without any reason, c) when Ms. Gayle continuously used profane language and abused Ms. Livingston, and d) when Ms. Gayle instructed Ms. Livingston to take her shawl off in the middle of a shared work space where Ms. Livingston and her co-worker's cubicles were, looked Ms. Livingston up and down in a sexual manner and upon being asked what her reasoning was, Ms. Gayle stated, "I wanted to see something."

78. Ms. Livingston was subject to Ms.  Gayle's conduct based upon her sex.

79. The Ms. Gayle and Ms. Livingston's conduct was unwelcome. Ms. Livingston felt compelled to take her shawl off in fear of losing her job.

80.   Plaintiff believed her work environment to be hostile or abusive.

81. The harassment was sufficiently pervasive and severe to alter the terms, conditions or privilege of Plaintiff's employment by creating a threatening, oppressive, hostile, and offensive work environment which interfered with Plaintiff's employment and well-being.

82. Defendants knew about Ms. Gayle and Ms. Lowe's harassing conduct when Ms. Livingston complained to Mr. Chang on March 8 and to Mr. Allen on March 9, 2017.

83. Defendants Magnum Media and VMD failed to take prompt and appropriate corrective action to end the harassment by waiting approximately two months to take action.

84. Defendant VMD violated the DCHRA sexual harassment provision by refusing to prevent the sexual harassment that Ms. Livingston sustained.

85. Defendant Magnum violated the DCHRA sexual harassment provision by refusing to prevent the sexual harassment that Ms. Livingston sustained.

86. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff has incurred and will continue to incur medical expenses for treatment by mental health providers, and other costs and expenses.

**COUNT III: RETALIATION**
**Violation of DCHRA § 2-1402, et seq.**

87. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

Defendants retaliated against Plaintiff, in violation of DCHRA § 2-1402
    a.  Pestering Ms. Livingston to return to her worksite and stop teleworking.

    b.  Embarrassing Ms. Livingston in front of her colleagues by asking when she will return to her worksite.

    c.  Making Ms. Livingston feel psychologically and physically threatened.

88. Defendants' aforementioned actions against Ms. Livingston were taken in retaliation for opposing unlawful employment practices in violation of D.C. Code § 2.1402

89. Ms. Livingston engaged in protected activity by filing EEO complaints and reporting gender discrimination to Defendants.

90. Defendants were aware of Ms. Livingston's protected activity.

91. The aforementioned actions caused tangible harm to Ms. Livingston in that they affected the terms, conditions, and privileges of her employment.

92. The aforementioned actions would reasonably dissuade an employee in Ms. Livingston's position to oppose and/or participate in protected activity

93. Ms. Livingston's protected activity was a motivating factor in Defendants' aforementioned actions.

94. Other similarly situated employees who did not participate in such complaints were not subject to the same conditions of employment as Ms. Livingston.

95. A causal connection exists between Defendants' aforementioned actions and Ms. Livingston's protected activity.

96. Defendants' actions caused Ms. Livingston monetary damages.

97. In addition to the above, Ms. Livingston also suffered anguish, humiliation, embarrassment, shock, and other damages.


## COUNT IV: NEGLIGENCE
### Negligence of Magnum Multimedia

98. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

99. Magnum Multimedia has contended that it is not liable under the DCHRA because it "not an employer" of Ms. Livingston.

100.      Accordingly, under Magnum Multimedia's contention, it is nonetheless a third party and had a duty to Ms. Livingston.

101.      Magnum Multimedia had a duty of care to Ms. Livingston as she was a VMD employee and Magnum Multimedia was the prime contractor at the job site.

102.      Magnum Multimedia breached its duty of care to Ms. Livingston by failing to stop the sexual harassment that was against her.

103.      As a result of Magnum Multimedia's breach of duty of care to Ms. Livingston, she sustained damages.

104.      As a result of Magnum Multimedia's breach of duty of care to Ms. Livingston, she sustained damages that were foreseeable to Magnum Multimedia.

105.     Ms. Livingston suffered anguish, humiliation, embarrassment, shock, and other

damages.


## PRAYER FOR RELIEF

WHEREFORE Plaintiff, Ms. Livingston, respectfully requests that the Court:

a)  Enter judgment in favor of Ms. Livingston declaring that Magnum Media and VMD

violated the DCHRA, D.C. Code § 2.1401- 2402 *et seq.*

b)  Award Plaintiff monetary damages in an amount to be determined at trial;

c)  Award Plaintiff reasonable attorneys' fees and costs;

d)  Award Plaintiff punitive damages in an amount to be determined at trial;

e)  Grant such other relief as the Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Superior Court Rules of Civil Procedure, Plaintiff demands

a trial by jury of all issues so triable as of right.


Dated: March 23, 2018                    Respectfully Submitted,

                                         */s/ Morris E. Fischer*_____
                                         Morris E. Fischer (D.C. Bar No. 490369)
                                         Morris E. Fischer, LLC.
                                         8720 Georgia Avenue, Suite 210
                                         Silver Spring, Md. 20910
                                         Phone: (301) 328-7631
                                         Fax: (301) 328-7638